UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

_____

HARRY L.[1],

                                  Plaintiff,

   v.                                                   6:18-CV-282
                                                                  (FJS/ATB)

COMMISSIONER OF SOCIAL SECURITY,

                                 Defendant.

_____

SAIMA A. AKHTAR, ESQ., for Plaintiff
DANIEL STICE TARABELLI, Special Asst. U.S. Attorney for Defendant

ANDREW T. BAXTER, U.S. Magistrate Judge

**REPORT-RECOMMENDATION**

This matter has been referred to me[2] for Report and Recommendation by the Honorable Frederick J. Scullin, Jr., Senior United States District Court Judge pursuant to 28 U.S.C. § 636(b) and Local Rule 72.3(d). This case has proceeded in accordance with General Order 18.

**I.    PROCEDURAL HISTORY**

Plaintiff originally filed an application for Supplemental Security Income ("SSI") with a protective[3] filing date of November 14, 2008. (Transcript ("T.") at 129-32, 136).

---

[1] In accordance with recent guidance from the Committee on Court Administration and Case Management of the Judicial Conference of the United States, which was adopted by the Northern District of New York in June 2018 in order to better protect personal and medical information of non-governmental parties, this Memorandum-Decision and Order will identify the plaintiff using only her first name and last initial.

[2] This case was originally assigned to the Honorable David E. Peebles, but was reassigned to me on July 3, 2019. (Dkt. No. 27).

[3] When used in conjunction with an "application" for benefits, the term "protective filing" indicates that a written statement, "such as a letter," has been filed with the Social Security

His claim was denied initially on April 28, 2009. (T. 42-46). Plaintiff requested a hearing, which was held on March 21, 2011, before Administrative Law Judge ("ALJ") Marie Greener, at which plaintiff testified by video conferencing from the Groveland Correctional Facility and was represented by counsel. (T. 28-41). The ALJ denied plaintiff's application in a decision dated April 12, 2011. (T. 10-22). The Appeals Council denied plaintiff's request for review on January 18, 2012. (T. 1-6).

Plaintiff's counsel filed a federal court action, seeking remand or reversal of the action. (T. 712-15). By stipulation and order, dated November 30, 2012, the case was remanded for further proceedings. (T. 716). On remand, the Appeals Council sent the case back to ALJ Greener, directing her to properly evaluate whether plaintiff met Listing 12.05, to properly evaluate plaintiff's social functioning capabilities, to properly analyze the opinion of consultative psychologist Jeanne Shapiro, and to properly apply steps 4 and 5 of the sequential evaluation, including obtaining the testimony of a vocational expert ("VE"). (T. 720-22). The Appeals Council included specific instructions for the remand. (T. 721-22).

ALJ Greener held plaintiff's second hearing on July 25, 2013. (T. 644-81). Plaintiff appeared by video conferencing from a correctional facility in Sonyea, New York. (T. 645). Plaintiff was represented by counsel. The ALJ also heard testimony from VE Josiah Pearson. (T. 671-81). On September 23, 2013, ALJ Greener issued a decision, denying plaintiff's claim. (T. 587-604). The Appeals Council denied

---

Administration, indicating the claimant's intent to file a claim for benefits. *See* 20 C.F.R. §§ 404.630, 416.340. There are various requirements for this written statement. *Id.* If a proper statement is filed, the Social Security Administration will use the date of the written statement as the filing date of the application even if the formal application is not filed until a later date.

plaintiff's request for review on February 6, 2015. (T. 573-76).

Plaintiff filed a second federal court action. *Harry L. v. Colvin*, No. 7:15-CV-732. On September 28, 2016, Chief District Court Judge Suddaby issued a Decision and Order, reversing the Commissioner's decision and remanding the case for further proceedings. (T. 930-51). The court specifically instructed the Commissioner to re-evaluate plaintiff's mental impairments under Listing 12.05 based on the correct legal standard. (T. 951). The court directed the ALJ to consider all the relevant evidence, and "should request additional evidence as needed." (*Id.*)

On December 16, 2016, the Appeals Council sent the case back for additional proceedings. (T. 952-54). The Appeals Council vacated the Commissioner's final decision, and ordered remand to "another Administrative Law Judge." (T. 954). The Appeal Council order stated that the proceedings should be "consistent with the order of the court." (*Id.*) The case was subsequently assigned to ALJ Bruce Fein, who held plaintiff's third hearing on August 8, 2017. (T. 890-904). Plaintiff testified in-person and was represented by counsel.

ALJ Fein issued an unfavorable decision on November 7, 2017. (T. 870-89). Plaintiff did not file exceptions to ALJ Fein's decision, and the Appeals Council did not assume jurisdiction of the case within sixty days of the ALJ's decision. Thus, ALJ Fein's decision became the final decision of the Commissioner. 20 C.F.R. § 416.1484 (c) - (d). Plaintiff then filed this action, challenging the Commissioner's final decision.

## II.    GENERALLY APPLICABLE LAW

### A.    Disability Standard

To be considered disabled, a plaintiff seeking disability insurance benefits or SSI disability benefits must establish that he is "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months . . . ." 42 U.S.C. § 1382c(a)(3)(A). In addition, the plaintiff's

> physical or mental impairment or impairments [must be] of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 1382c(a)(3)(B).

The Commissioner uses a five-step process, set forth in 20 C.F.R. sections 404.1520 and 416.920, to evaluate disability insurance and SSI disability claims.

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity. If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which meets or equals the criteria of an impairment listed in Appendix 1 of the regulations. If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work experience . . . . Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the

      residual functional capacity to perform his past work.  Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant can perform.

*Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982); *see* 20 C.F.R. §§ 404.1520, 416.920.  The plaintiff has the burden of establishing disability at the first four steps.  However, if the plaintiff establishes that her impairment prevents him from performing her past work, the burden then shifts to the Commissioner to prove the final step.  *Id.*

    **B.**    **Scope of Review**

    In reviewing a final decision of the Commissioner, a court must determine whether the correct legal standards were applied and whether substantial evidence supported the decision.  *Selian v. Astrue*, 708 F.3d at 417; *Brault v. Soc. Sec. Admin, Comm'r*, 683 F.3d 443, 448 (2d Cir. 2012); 42 U.S.C. § 405(g)).  Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Talavera v. Astrue*, 697 F3d 145, 151 (2d Cir. 2012).  It must be "more than a scintilla" of evidence scattered throughout the administrative record.  *Id.*  However, this standard is a very deferential standard of review " – even more so than the 'clearly erroneous standard.'" *Brault*, 683 F.3d at 448.

    "To determine on appeal whether an ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining the evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams on behalf of Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988).  However, a reviewing court may not substitute its interpretation of the administrative record for that of the Commissioner, if the record

contains substantial support for the ALJ's decision.  *Id*.  *See also Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

An ALJ is not required to explicitly analyze every piece of conflicting evidence in the record.  *See, e.g., Mongeur v. Heckler*, 722 F.2d 1033, 1040 (2d Cir. 1983); *Miles v. Harris*, 645 F.2d 122, 124 (2d Cir. 1981) (we are unwilling to require an ALJ explicitly to reconcile every conflicting shred of medical testimony).  However, the ALJ cannot "'pick and choose' evidence in the record that supports his conclusions." *Cruz v. Barnhart*, 343 F. Supp. 2d 218, 224 (S.D.N.Y. 2004); *Fuller v. Astrue*, No. 09-CV-6279, 2010 WL 5072112, at *6 (W.D.N.Y. Dec. 6, 2010).

## III.   **PLAINTIFF'S CONTENTIONS**

Plaintiff raises the following three arguments in his brief:

1.   The Commissioner failed to comply with the Appeals Council remand order. (Pl.'s Br. at 18-21) (Dkt. No. 16).

2.   Plaintiff's intellectual disability meets Listing 12:05. (Pl.'s Br. at 21-25).

3.   The Commissioner erred in applying the Grid Rules. (Pl.'s Br. at 25-29).

Plaintiff asks that the court remand for calculation of benefits, and in the alternative, if the case is remanded, that the court order the remand proceedings be assigned to a new ALJ, and direct that the case be decided within 120 days of the court's order. (Pl.'s Br. at 30).

The Commissioner agrees that ALJ Fein made errors in this case, necessitating a remand, but argues that the remand should be for further proceedings, not for calculation of benefits.  For the following reasons, the court recognizes that remand is necessary, but agrees with the defendant that the proper relief is an expedited remand

for further proceedings.

## IV. FACTS

Plaintiff's counsel engaged in a lengthy discussion of the facts and the medical evidence in this case. (Pl.'s Br. at 5-17). Defendant concedes that a remand is necessary and has not included a recitation of the facts. The court accepts most of the facts as stated by the plaintiff. Rather than reciting all the medical and testimonial evidence at the outset, the court will discuss the relevant details below, as necessary to address the issues raised by plaintiff.

## V. ALJ FEIN'S DECISION

After reviewing the procedural history discussed above, at step one, ALJ Fein found that plaintiff had not engaged in substantial gainful activity since his initial application on November 14, 2008. (T. 872). At step two, ALJ Fein found that plaintiff had the following severe impairments: dysthymic disorder, bipolar disorder, antisocial personality disorder, chronic obstructive pulmonary disease ("COPD") with asthma, and migraine headaches. (T. 873). ALJ Fein determined that plaintiff's tobacco use disorder, and his drug addiction and/or alcoholism were not severe. However, the ALJ also stated that plaintiff's non-severe impairments were considered in determining plaintiff's RFC. (*Id.*) In making the severity determination, the ALJ discussed reports from Psychiatric Social Worker ("LCSW"), Judi Cohen;[4] James Naughton, DO; and

---

[4] LSCW Cohen's report was reviewed by Lyle Montgomery, M.D., a psychiatrist at St. Lawrence County Mental Health Clinic. (T. 873).

7

Jeanne A. Shapiro, Ph.D.[5] The ALJ also referenced records from a 2010 admission to Claxton-Hepburn Medical Center in January of 2010; a letter Mark Eastwood, LSCW, with records from Groveland Correctional Facility; a 2017 consultative report from Mary Buban, Ph.D; and 2016 records from Canton-Potsdam Hospital. (T. 873-75).

At step three, ALJ Fein determined that plaintiff's severe impairments did not meet or equal the severity of a Listed Impairment. (T. 875-77). In making this determination, the ALJ began by considering Listing 12.04 (affective disorders); 12.08 (personality disorders); and 12.09 (substance addiction disorders). (T. 876). The ALJ also stated that "[d]etailed evaluation of listing 12.05 [intellectual disorder] and its requirements is necessary."[6] (*Id.*) The ALJ then "cut and pasted" a substantial portion of ALJ Greener's step three determination that plaintiff did not meet Listing 12.05. (*Compare* T. 876-77 (ALJ Fein) *with* T. 592-94 (ALJ Greener)). ALJ Fein essentially found that there was insufficient evidence to show that plaintiff had an "intellectual disability," and even if he did, plaintiff's daily activities, social functioning, concentration, persistence, and pace were not sufficiently limited to meet the requirements of the Listings. (T. 876-77).

At step four, the ALJ found that plaintiff retained the RFC to perform "less than a full range of light work," with the ability to lift and/or carry 20 pounds occasionally and 10 pounds frequently. (T. 877). He could sit for 6 hours in an 8-hour workday with

---

[5] Dr. Shapiro was a consultative examiner, but examined plaintiff three times, once for Social Security (February 2, 2009) and twice for the County Department of Social Services (June 24, 2009 and January 29, 2010). (T. 873, 874).

[6] "Intellectual Disability" and "Intellectual Disorder" represent the same Listed Impairment. The newer Listing of Impairments went into effect on January 17, 2017. 2016 WL 5341732.

normal breaks, stand and/or walk 6 hours in a normal workday, and could perform all postural activities on an occasional basis. (*Id.*)  ALJ Fein determined that plaintiff should avoid concentrated exposure to fumes, odors, gases, dust and poorly ventilated areas; and should be limited to jobs with only simple, routine or repetitive tasks; and have only occasional interaction with co-workers and supervisors. (T. 877-78).  Finally, the ALJ found that plaintiff would need to work in a low stress job, which was defined as needing "only occasional decision-making, changes in the work setting, and or judgment being required." (T. 878).

ALJ Fein found that plaintiff had no past relevant work. (T. 880).  At step five, the ALJ found that if the plaintiff could perform the "full range of light work," the Medical Vocational Guidelines ("the Grids") would dictate a finding of not disabled based upon his age, education, and prior work experience.[7] (T. 881).  ALJ Fein then stated that when the plaintiff cannot perform substantially all of the exertional demands of a particular category of work, or if the plaintiff has solely nonexertional limitations, then the Grids are used as a "framework." (*Id.*)  ALJ Fein found that, in this case, "the additional limitations have little or no substantial effect on the occupational base of unskilled light work," and thus, a finding of "not disabled" was appropriate under the framework of the rules, under the guidelines of Rule 201.00(h), and Social Security Rulings ("SSR") 85-15, 96-8p, and 96-9p. (*Id.*)

---

[7] ALJ Fein referenced Rule 202.17 and 202.10. 20 C.F.R. Pt. 404, Subpt. P App. 2, §§ 202.17, 202.10.

## VI. LISTED IMPAIRMENT

### A. Legal Standard

At step three of the disability analysis, the ALJ must determine if plaintiff suffers from a listed impairment. *See* 20 C.F.R. §§ 404.1520, 416.920. It is the plaintiff's burden to establish that his or her medical condition or conditions meet all of the specific medical criteria of particular listed impairments. *Pratt v. Astrue,* 7:06-CV-551, 2008 WL 2594430 at *6 (N.D.N.Y. 2008) (citing *Sullivan v. Zebley,* 493 U.S. 521, 530 (1990)). If a plaintiff's "impairment 'manifests only some of those criteria, no matter how severely,' such impairment does not qualify." *Id.* In order to demonstrate medical equivalence, a plaintiff "must present medical findings equal in severity to all the criteria for the *one* most similar listed impairment." *Sullivan v. Zebley*, 493 U.S. at 531 (emphasis added).

### B. Application

As stated above, the defendant concedes that ALJ Fein erred in his Listing analysis, requiring a remand for further proceedings. ALJ Fein essentially copied large parts of the Listing analysis written by ALJ Greener which was invalidated by Judge Suddaby's prior Decision and Order. Defendant also concedes that ALJ Fein used an outdated Listing, notwithstanding that the newly revised Listing 12.05 became applicable to cases pending after January 17, 2017. In fact, ALJ Fein did not even find that plaintiff's intellectual disorder was "severe" at step two.[8] (T. 873). The ALJ did

---

[8] Although ALJ Fein did not find that plaintiff's intellectual disorder was "severe" at step two, he stated at step three that a "[d]etailed evaluation of listing 12.05 and its requirements is necessary." (T. 876). The court can only assume that ALJ Fein engaged in this "detailed" analysis because of the court's order, even though he did not find that the intellectual disorder was severe, which would have

find that plaintiff had a variety of severe mental impairments, but omitted the "cognitive impairment" that ALJ Greener found was severe enough to reach the step three analysis of Listing 12.05. Because the defendant concedes that the ALJ's errors at step three and at subsequent steps in the analysis necessitate a remand, the court will proceed to determine whether the errors warrant a remand for further proceedings or a remand for calculation of benefits.

### VII.     REVERSAL AND REMAND FOR BENEFITS OR FOR FURTHER PROCEEDINGS

#### A.     Legal Standards

Remand to the Commissioner for further development of the evidence is appropriate when there are gaps in the administrative record or where the ALJ has applied an improper legal standard. *Rosa v. Callahan*, 168 F.3d 72, 82-83 (2d Cir. 1999); *Castro v. Comm'r of Soc. Sec.*, No. 15-CV-336, 2016 WL 1274542, at *16 (E.D.N.Y. Mar. 31, 2016) (citations omitted). Reversal for calculation of benefits is appropriate only if the record contains persuasive proof of disability, and a remand for further evidentiary proceedings would serve no useful purpose. *Id.*

#### B.     Application

Generally, when the court's reversal addresses an early step in the sequential analysis, the proper relief is a remand for further proceedings in order for the Commissioner to correct the errors and properly complete the five-step process. In this case, plaintiff argues that the ALJ's error at step three necessitate a reversal and a remand for calculation of benefits because plaintiff meets the requirements of Listing

---

been a prerequisite to the step three analysis.

12.05, and this would be the third time that the Commissioner had the opportunity to properly address plaintiff's application. Thus, the court must determine whether the record provides persuasive proof of disability at step three.

At the time of ALJ Fein's decision, Listing 12.05 required the plaintiff to demonstrate that he had an "intellectual disorder," together with all of the following requirements:[9]

> 1. Significantly subaverage general intellectual functioning evidenced by a or b:
>    a. A full scale (or comparable) IQ score of 70 or below on an individually administered standardized test of general intelligence; or
>    b. A full scale (or comparable) IQ score of 71-75 accompanied by a verbal or performance IQ score (or comparable part score) of 70 or below on an individually administered standardized test of general intelligence; ***and***
>
> 2. Significant deficits in adaptive functioning currently manifested by extreme limitation of one, or marked limitation of two, of the following areas of mental functioning:
>    a. Understand, remember, or apply information (see 12.00E1; or
>    b. Interact with others (see 12.00E2); or
>    c. Concentrate, persist, or maintain pace (see 12.00E3); or
>    d. Adapt or manage oneself (see 12.00E4); ***and***
>
> 3. The evidence about your current intellectual and

---

[9] Listing 12.05 also includes a section (A). This court and the defendant, have quoted only Listing 12.05(B) because section (A) requires that the individual's cognitive impairment would prevent the plaintiff from even "participating" in standardized testing. Listing 12.05(A)(1). Plaintiff does not argue that his cognitive impairment is so severe as to prevent him from being able to participate in testing. Dr. Shapiro clearly performed the standardized tests, and plaintiff was able to participate, regardless of the ultimate score. Thus, the court will only discuss section (B) of Listing 12.05.

>    adaptive functioning and about the history of your
>    disorder demonstrates or supports the conclusion that
>    the disorder began prior to your attainment of age 22.

20 C.F.R. Pt. 404, Subpt. P, App. 1 §12.05(B) (emphasis added).  Plaintiff argues that Chief Judge Suddaby has already determined that plaintiff meets Listing 12.05(B)(1) and (B)(3), making this determination the "law of the case." (Pl.'s Br. at 22).  Plaintiff argues that the "remaining open question focuses on whether [plaintiff] meets the B2 criteria requiring one extreme or two marked limitations in the areas of functioning listed." (*Id.*)

When Chief Judge Suddaby remanded this action for further proceedings, he focused first on the ALJ's discussion of plaintiff's adaptive functioning, finding that the ALJ failed to "assess evidence contrary to her conclusion that a plaintiff did not have deficits in adaptive functioning . . . ." (T. 949).  ALJ Greener stated that even though Dr. Shapiro performed "one time" intellectual testing, there was no indication that plaintiff had an intellectual disability. (T. 947).  The court noted that in the Second Circuit it was reasonable to presume that a claimant would have a "fairly consistent IQ throughout his or her lifetime." (*Id.*)  Thus, evidence of a "qualifying IQ" as an adult suffices to satisfy the plaintiff's "prima facie" burden to establish the requisite "'significantly subaverage general intellectual functioning . . . initially manifested before age 22 . . . .'" (T. 947-48) (citations omitted).

The court found that ALJ Greener's determination that there was insufficient evidence that plaintiff had the adaptive deficits prior to age 22 was not supported by substantial evidence, stating that "'Courts have found circumstantial evidence, . . .

sufficient to infer deficits in adaptive functioning prior to age 22," such as attending special education classes, dropping out of school, and difficulties in reading, writing, or math. (T. 948). Judge Suddaby also found that ALJ Greener may have "misinterpreted" some of the evidence regarding plaintiff's adaptive functioning and discussed discrepancies between one of Dr. Shapiro's reports and the ALJ's statements of fact. (T. 950). The court noted that ALJ Greener did not properly consider the plaintiff's physical impairments in conjunction with his mental impairments for purposes of Listing 12.05C. (*Id.*)

Notwithstanding the above discussion, the court's remand order stated that the ALJ should "reevaluate" the plaintiff's mental impairments under the correct legal standard, should consider all the relevant evidence from Dr. Shapiro and Dr. Naughten, and "the ALJ should request additional evidence as needed." (T. 951). On remand, ALJ Fein did obtain additional medical evidence, including one mental evaluation and one physical evaluation. (T. 1064-66 (mental), T. 1603-1606 (physical)). Thus, although Judge Suddaby pointed out errors in the ALJ's evaluation, which required remand, the court did not specifically find that plaintiff met the relevant parts of the Listing analysis. In addition, the court invited the ALJ to obtain additional evidence, and the court could not have known what that evidence would reveal or how the ALJ's analysis would be affected by the additional evidence.

Even if the court were to assume, for purposes of argument, that plaintiff met the B1 and B3 criteria based upon Judge Suddaby's decision, plaintiff has not shown that there is "persuasive proof" in the record that he meets the B2 criteria. Plaintiff argues

14

that "plaintiff has at least a marked limitation in his ability to understand, remember, or apply information." (Pl.'s Br. at 22). Plaintiff cites to his difficulty attempting to work, including needing someone to explain things to him. (*Id.*) However, none of the medical personnel who assessed limitations in this area found "marked" limitations in two areas of functioning or extreme limitations in one area of functioning. Plaintiff himself does not make this argument. Instead plaintiff argues that the court should find marked limitations based on the facts in the case, contrary to what the medical providers have assessed. Plaintiff cited to Dr. Shapiro's report, finding that plaintiff was "moderately limited in numerous areas," and that he was not able to participate in any work activities as a result of these limitations. (T. 547-48).

Then plaintiff argues that he has "at least a marked limitation in his ability to interact with others." (Pl.'s Br. at 23). Once again, no medical provider found that plaintiff had a "marked" limitation in that area. Plaintiff argues that the facts show that he had such a limitation, including advising Dr. Shapiro that he felt people did not like him, and Dr. Shapiro's finding that plaintiff was "socially withdrawn." (*Id.*) Plaintiff argues that he has a "marked, if not extreme" limitation in his ability to adapt or manage himself. (Pl.'s Br. at 24). Plaintiff again cites no medical records finding such a limitation.

Dr. Buban[10] found that plaintiff had a "moderate" *to* "marked" limitation in adapting or managing himself. (T. 1078). She assessed the other limitations as "mild"

---

[10] Dr. Buban's report was a detailed response to ALJ Fein's medical interrogatory and a form-medical source statement, which were obtained after the court's remand and was evidence not considered by ALJ Greener. (T. 1064-66, 1068-82).

15

or "mild" to "moderate." (*Id.*)  Plaintiff argues that Dr. Buban's finding of moderate limitations in understanding, remembering or applying information, mild to moderate limitations in interacting with others and in concentrating, persisting, or maintaining pace should be given "little weight."  This court cannot take bare facts and make a determination that plaintiff has one "extreme" or two "marked" limitations in areas of functioning.  To do so would be to substitute the court's opinion for the medical personnel, and ultimately, the Commissioner.  That is not the province of the court. *See Veino v. Barnhart*, 312 F.3d 578, 596 (2d Cir. 2002) (the court will not substitute its own judgment for that of the Commissioner).  In addition, as stated above, meeting the severity of a Listed Impairment involves strict requirements.  A plaintiff must meet all the requirements of a Listed Impairment.

   Plaintiff also argues that the ALJ erred in applying the Grid rules. (Pl.'s Br. at 25-29).  Defendant concedes that if ALJ Fein's step two and step three determinations were not supported by substantial evidence, their evaluation may have affected the ALJ's analysis at the remaining steps of the process.[11]  The defendant also recognizes that the RFC evaluation and the step five evaluation needs to be revisited.  While the light work Grid does not direct a finding of disabled, it is unclear how the ALJ found

---

[11] Defendant states that "it is entirely unclear how ALJ Fein's misstatements impacted the rest of the decision." (Def.'s Br. at 16-17).  Dr. Weiss was a non-examining state agency physician who reviewed Dr. Shapiro's reports. (T. 478-80).  Defense counsel agrees that some of the statements in Dr. Weiss's opinion were not accurate (as they relied on statements in Dr. Shapiro's report that Judge Suddaby found were inaccurate), but ALJ Fein repeated those statements as though they were accurate and used Dr. Weiss's opinion to assess plaintiff's RFC. (Def.'s Br. at 17).  Defendant states that on remand, the ALJ should be directed to reevaluate plaintiff's intellectual disability, beginning at step two, and if it is found severe, properly evaluate step three, using the current version of the Listing, "without reference to ALJ Greener's decision." (*Id.*)

16

that plaintiff's limitations, both mental and physical, would not significantly impact his ability to perform a full range of light work, necessitating VE testimony.

The ALJ found that plaintiff could perform light work, relying in great part on the opinion of consultative expert Dr. Suzanne Patrick-MacKinnon, which was obtained by ALJ Fein after the court remand. (T. 878). ALJ Fein states that [Dr. Patrick-MacKinnon's] overall physical function assessment ***has been adopted herein, and is directly reflected in the above determined RFC.***" (T. 878). Defense counsel recognizes that Dr. Patrick-MacKinnon found that plaintiff could only stand and walk for two hours while light work requires standing and/or walking for up to six hours per day. (Def.'s Br. at 17-18). Although plaintiff argues that if the ALJ were adopting Dr. Patrick-MacKinnon's evaluation, the plaintiff should be limited to sedentary work, which according to the Grid, would indicate that plaintiff was disabled when he turned 50. However, the defendant states that when Dr. Patrick-MacKinnon also found that plaintiff could lift and carry weight sufficient for light work, and had the ability to operate foot controls. (Def.'s Br. at 18, T. 1607-1612). In addition, there is other evidence in the record which could support a finding that plaintiff could perform aspects of light work. (*See* Dr. Naughton's evaluation of February 2, 2009 - T. 404) (Dr. Naughton found that plaintiff had no limitations when he was not suffering from a migraine headache), and RFC by Patricia Snider, PA - who stated that plaintiff had no physical limitations - T. 565).

Instead, defendant argues that when a claimant's limitations "fall in the middle of two different exertional levels, the ALJ should not apply the rules at either level and

17

instead should call for the services of a VE. (Def.'s Br. at 18). The defendant also states that "[r]egardless of whether the ALJ accepts or rejects those limitations, the Court should also order the ALJ to obtain [VE] testimony, given plaintiff's numerous non-exertional limitations." (*Id.*)

In *Webb v. Berryhill*, No. 15-CV-971, 2017 WL 1148331 (W.D.N.Y. Mar. 28, 2017), the court faced a similar case, although the defendant was not conceding error in *Webb*. The court found that the ALJ made an error at step three in analyzing Listing 12.05. *Id.* at *3. The court found that the record did not "persuasively demonstrate" that plaintiff met the listing. *Id.* at *4. The court also noted that reversal for calculation of benefits is particularly appropriate when a person's claim for benefits has been pending a long time and additional administrative proceedings would only lead to further delay. *Id.* (citations omitted). However, "'absent a finding that the claimant was actually disabled, delay alone is an insufficient basis on which to remand for benefits." *Id.* (quoting *Bush v. Shalala*, 94 F.3d 40, 46 (2d Cir. 1996). Based on the discussion above, this court cannot find that a remand for further proceedings would serve no useful purpose, and is compelled to recommend remand for further proceedings.

Plaintiff has requested that if the court remands this action for further proceedings, the court should impose time limits on the administrative proceedings to prevent even greater delay. (Pl.'s Br. at 30). In *Michaels v. Colvin*, 621 F. App'x 35, 41 (2d Cir. 2015), the Second Circuit agreed that imposing such a time limit was appropriate, particularly in cases of extreme delay which is due to errors by the ALJ. I agree that a time limit for remand is appropriate in this case. This is true because ALJ

Fein simply repeated the language and the analysis that the court specifically found invalid in ALJ Greener's opinion, and the Government concedes that the case should be remanded for further proceedings. This is the third time that this case has returned to this court, and plaintiff filed his application more than ten years ago. Therefore, if the court adopts this recommendation, I also recommend that a time limit for remand be set for 120 days from the date of the court's remand order.

**WHEREFORE**. based on the findings above, it is

**RECOMMENDED**, that the Commissioner's decision be **REVERSED**, and this case be **REMANDED** for further proceedings pursuant to sentence four of section 405(g), consistent with the above Report-Recommendation, including a proper severity analysis, together with a proper analysis of Listing 12.05, and if the determination proceeds after step three, a proper RFC determination, and a proper step five determination, including obtaining the testimony of a VE if appropriate, and it is

**RECOMMENDED**, that if the court adopts this Recommendation, that the Commissioner be directed to conduct and complete remand proceedings within 120 days from the date of the court's remand order, and it is

**RECOMMENDED**, that judgment be entered for the plaintiff.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have 14 days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN 14 DAYS WILL PRECLUDE APPELLATE REVIEW.** *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993) (citing *Small v. Secretary of Health and Human Services*, 892 F.2d 15 (2d

Cir. 1989)); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72, 6(a), 6(e).

Dated: August 5, 2019

Hon. Andrew T. Baxter
U.S. Magistrate Judge